**GREATER COMMUNITY HOSPITAL,**
Appellant,

v.

**PUBLIC EMPLOYMENT RELATIONS
BOARD, Appellee,**

and

**Greater Community Hospital Employees
Association, Local 725 of the Service
Employees International Union, Interve-
nor–Appellee.**

No. 95–269.

Supreme Court of Iowa.

Sept. 18, 1996.

Leon R. Shearer and Becky S. Goettsch of Shearer, Templer, Pingel & Kaplan, P.C., West Des Moines, for appellant.

Jan V. Berry, Des Moines, for appellee.

Charles E. Gribble of Gribble & Prager, Des Moines, for intervenor-appellee.

J. Kirk Norris and Karen L. Hansen, Des Moines, for amicus curiae Iowa Hospital Association.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

This controversy stems from a hospital's refusal to divulge certain salary data during collective bargaining negotiations with its employees' union. Upon challenge by the union, the Public Employment Relations Board (PERB) ruled that the hospital's recalcitrance amounted to a prohibited practice under Iowa Code section 20.10 (1995). It ordered the information disclosed, and the agency's decision was affirmed on judicial review by the district court.

On appeal, the hospital raises a host of issues centering on the relevancy of the requested information: whether the pertinent provision of the Public Employment Relations Act should be read broadly or narrowly, whether the PERB erred by not following National Labor Relations Board precedent, and whether the requested salary data is relevant to the negotiations. Like the district court, however, we conclude that the question of disclosure is ultimately controlled by Iowa Code section 347.13(15) (1995), the statute that makes public the information sought by the union. We therefore affirm the judgment of the district court.

### I. Background.

Greater Community Hospital is a public employer within the meaning of Iowa Code section 20.3(11). The record reveals that the hospital receives approximately five percent of its total revenue from property taxes. Those funds are used to pay, among other things, hospital employees' social security payroll taxes and contributions to the Iowa Public Employees' Retirement System (IPERS).

The hospital and the intervenor, Greater Community Hospital Employees Association [hereinafter "union"], are parties to a collective bargaining agreement. The agreement contained a wage and insurance reopener provision for the 1993–94 contract year. Pursuant to this provision, the union requested that the contract be reopened for negotiations related to base wages and insurance benefits.

In preparation for negotiations, the union requested the salaries of hospital administrators and supervisors (nonbargaining unit employees), including the date and amount of their most recent pay increase. The hospital refused to release the requested information, responding simply that supervisory personnel as a whole received no more than a three percent salary increase for the prior year. The hospital also offered to provide supporting financial summaries, and agreed that two union executives could review financial records for verification of the summaries on the condition that exact salaries would not be disclosed to any other member of the union negotiating team. After further negotiations, the hospital furnished general information regarding the average salary increase enjoyed by supervisory employees over the preceding five years.

Unsatisfied with this response, the union filed a prohibited-practice complaint with PERB. The complaint alleged numerous violations of Iowa Code chapter 20, the Public Employment Relations Act. In particular, the complaint claimed violation of Iowa Code sec-

tions 20.10(1) (refusal to negotiate in good faith), (2)(a) (interference with exercise of employee rights), (2)(e) (refusal to negotiate collectively with union representative), (2)(f) (denial of certification rights), and (2)(g) (refusal to participate in good faith in impasse procedures).

Following hearing, PERB ruled that the salary information requested was relevant under either its own broad relevancy standard or the more restrictive standard developed by the NLRB for private sector negotiations. In addition, PERB concluded that the information sought was public, not privileged, because tax revenues were used to pay employees' social security payroll taxes and IPERS contributions. The district court affirmed PERB on judicial review, and this appeal by the hospital followed.

### II. Scope of Review.

■ In judicial review proceedings, the district court functions in an appellate capacity to correct errors of law. Iowa Code § 17A.19(8); *Iowa Planners Network v. Iowa State Commerce Comm'n*, 373 N.W.2d 106, 108 (Iowa 1985). On our subsequent review, we determine whether the district court correctly applied the law. Although we give weight to PERB's interpretation of chapter 20, the agency's legal conclusions are not binding on us. *Charles City Community Sch. Dist. v. PERB*, 275 N.W.2d 766, 769 (Iowa 1979). We are obliged to make an independent determination of the meaning of pertinent statutes. *Id.*

### III. Analysis.

■ Iowa Code section 20.10(1) imposes a duty upon public employers and public employees to "negotiate in good faith." This duty carries with it an obligation on the employer's part to supply the union with information relevant and necessary to effectively represent the employees in contract negotiations. *NLRB v. Acme Indus. Co.*, 385 U.S. 432, 435–36, 87 S.Ct. 565, 568, 17 L.Ed.2d 495, 499 (1967); *San Diego Newspaper Guild v. NLRB*, 548 F.2d 863, 866 (9th

Cir.1977); *Waterloo Educ. Ass'n*, PERB Case No. 921 (1977). This appeal centers on the parties' disagreement over the precise dimension of that relevancy standard.

■ Rather than adopting federal precedent in its evaluation of information requests, PERB decisions have established that a public employer has a duty to provide information that (1) is clearly specified, (2) *may be relevant* to the bargaining process, and (3) is not otherwise protected or privileged. *Washington Educ. Ass'n*, PERB Case No. 1635 (1980). This "may be relevant" standard requires disclosure unless the requested information "plainly appears irrelevant." *Id.* at 3.

■ Claiming this standard departs from the narrower standard adopted by the NLRB in private-sector negotiation,[1] the hospital seeks reversal on the ground PERB's application of its own standard violates Iowa Code section 17A.19. To sustain its claim, however, the hospital must prove the agency's decision is unreasonable or characterized by abuse of discretion. *See* Iowa Code § 17A.19(8)(g). In that context, we have defined unreasonableness as "action in the face of evidence to which there is no room for difference of opinion among reasonable minds or not based on substantial evidence." *Office of Consumer Advocate v. Iowa State Commerce Comm'n*, 419 N.W.2d 373, 374 (Iowa 1988). The hospital cannot make that showing here.

This court has long held that federal labor relations decisions may be "illuminating and instructive" on questions arising under Iowa Code chapter 20, but such decisions "are neither conclusive nor compulsory." *City of Davenport v. PERB*, 264 N.W.2d 307, 313 (Iowa 1978). Iowa Code section 20.6(5) authorizes PERB to "[a]dopt rules ... as it may deem necessary to carry out the provisions of this chapter." Determining rules and procedures for the disclosure of information relevant to bargaining clearly falls within PERB's authority. The agency has long maintained that important differences be-

1. "Where the request is for information concerning employees outside of the bargaining unit, *the Union must show that the requested information*

*is relevant to bargainable issues." San Diego Newspaper Guild*, 548 F.2d at 867–68 (citing cases).

tween bargaining in the public and private sectors justify departure from NLRB policy on the question of discovery:

The spectrum of relevant information for public sector employee organizations in Iowa is much broader than would be normally considered relevant for private sector unions because the public sector employee organization in Iowa faces a prospect of preparing a fact-finding and/or arbitration presentation. An employee organization at the fact-finding or arbitration stage is required to justify the reasonableness of its proposals before a third party neutral who is unlikely to be familiar with the financial situation of the employer or the wage history of the bargaining unit employees.

*Iowa Western Community College,* PERB Case No. 702 (1976).

Like the district court, we cannot say that PERB's explanation for its standard lacks reasoning or demonstrates an abuse of discretion. The court properly recognized PERB's discretionary authority on this point.

■ The hospital argues alternatively that, even applying PERB's broad standard, the salary data being sought by the union is plainly irrelevant to these proceedings. The argument is weakened, however, by many of the same factors justifying PERB's application of the broad relevancy standard. In determining the reasonableness of competing offers, an arbitrator would be required to consider, among other things, "the ability of the public employer to finance economic adjustments." Iowa Code § 20.22(9). The statute makes this information relevant regardless of the employer's rationale for rejecting the union proposal. Under the record before us, we think it reasonable for PERB to conclude that the salaries of non-bargaining unit employees, and the amounts and frequency of their raises, could impact an employer's ability to finance the proposed wage increase for bargaining unit employees. If the parties reached an impasse, the union would need this information to make its case to the arbitrator.

■ Under the three-part test established by PERB, the question remains whether the information, even if relevant, is privileged and not subject to disclosure. The hospital claims that customary confidentiality accorded administrators' salaries, and the potential for misuse if such salary details were revealed, outweigh any consideration of relevance. PERB and the district court rejected this argument, however, in the belief that such records are subject to public examination in accordance with Iowa Code section 347.13(15). The statute, which governs the duties and powers of county hospital boards of trustees, provides:

There shall be published quarterly in each of the official newspapers of the county as selected by the board of supervisors pursuant to section 349.1 the schedule of bills allowed and there shall be published annually in such newspapers the schedule of salaries paid by job classification and category, but not by listing names of individual employees. *The names, addresses, salaries, and job classification of all employees paid in whole or in part from a tax levy shall be a public record and open to inspection at reasonable times as designated by the board of trustees.*

Iowa Code § 347.13(15) (emphasis added).

The hospital argues strenuously that section 347.13(15) limits disclosure unless employee *salaries* are paid from public funds. Because the hospital uses the tax levy to pay payroll taxes and IPERS, not salaries, it claims public disclosure is not required. As wisely noted by the district court, however, the statute makes no such distinction between "pay" and "salary."

By its terms, section 347.13(15) compels disclosure of "names, addresses, salaries, and job classification of all employees *paid in whole or in part* from a tax levy," not—as the hospital suggests—the names, addresses, and salaries of all employees *whose salaries are* paid from such sources. We are not at liberty to add to the statute the qualifying language the hospital suggests. Nor would it be in keeping with Iowa Code chapter 22, the Open Records Act, to do so. *See* Iowa Code §§ 22.1(3) (defining *"public records"* to include any records of any county facility "supported in whole or in part with property tax revenue"); 22.2(1) (giving every person

the right to examine "public records" as defined by statute).

We have long recognized that open access to public records demands a liberal reading of chapter 22 and a narrow construction of statutory exemptions from disclosure. *City of Dubuque v. Telegraph Herald, Inc.*, 297 N.W.2d 523, 526 (Iowa 1980). PERB and the district court interpreted section 347.13(15) consistently with this standard. Common sense dictates that salary records open to the public should be open for examination by union representatives engaged in collective bargaining negotiations with a public employer. The district court was correct in so holding, and its order compelling disclosure must be affirmed.

**AFFIRMED.**