John J. Tipton Executive Director Colorado Department of Revenue 404 Capitol Annex 1375 Sherman Street Denver, CO 80203
Dear Mr. Tipton:
I write in response to your request for an Attorney General's Opinion regarding the disclosure of financial records submitted to the Department of Revenue by an entity requesting a certificate of self-insurance.
QUESTION PRESENTED AND CONCLUSION
Is the information supplied by a company seeking a self-insurance certificate pursuant to § 10-4-716, C.R.S. (1987) confidential financial information under the Open Records Act?
Generally, no.
ANALYSIS
Pursuant to § 10-4-716(1), C.R.S. (1987), any "person in whose name more than twenty-five motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the director" of the Department of Revenue. The applicant for the certificate must submit financial information which proves that the person can meet the requirements of § 10-4-706(1)(b) to (1)(e), C.R.S. (1987) and can pay any and all judgments which may be entered against it. Section 10-4-716(2), C.R.S. (1987).
The financial information which is submitted is subject to the Open Records Act, §§ 24-72-202(6) and 203(1), C.R.S. (1988). Under the Open Records Act:
 The custodian shall deny the right of inspection of the following records, unless otherwise provided by law; except that any of the following records . . . shall be available to the person in interest under this subsection (3):
. . . .
 (IV) Trade secrets, privileged information, and confidential commercial, financial, geological, or geophysical data furnished by or obtained from any person . . . .
Section 24-72-204(3)(a), C.R.S. (1988) (emphasis added).
This exception to disclosure serves a dual purpose. It encourages cooperation by those persons who may not be required to provide information to a governmental agency, and it protects the privacy rights of those persons who are required to provide certain information. Freedom Newspapers, Inc. v.Denver Rio Grande Railroad Co., 731 P.2d 740, 743
(Colo.App. 1986). When reviewing questions of what constitute confidential financial or commercial information, Colorado courts have adopted the tests employed by the federal courts when deciding cases under the Federal Freedom of Information Act.Id.
Information is confidential if its disclosure is (1) likely to impair the government's ability to obtain necessary information in the future; or (2) likely to cause substantial harm to the competitive position of the person from whom the information was obtained. Burke Energy Corp. v. Department ofEnergy, 583 F. Supp. 507, 510 (D. Kan. 1984). The information must be of the type which would not customarily be released to the public by the person from whom it was obtained. There must be independent evidence to show that the disclosure will likely result in substantial harm to the person's competitive position. Id. A showing of actual harm is not required; a showing that a likelihood of substantial harm exists is sufficient. Professional Review Organization v.United States Department of Health,607 F. Supp. 423, 426 (D. D.C. 1985). Before disclosing the information the entity which provided the information should be permitted to state if it opposes disclosure and the reasons for its opposition. See Freedom Newspapers, Inc. v.Denver Rio Grande Railroad Co., supra.
The harm to the person or entity providing the information must be viewed in the context of the right of the public to have access to information about the operations of a public agency.Freedom Newspapers, Inc., supra. The public has a strong interest in knowing that an agency is carrying out its functions. Charlesgate Nursing Center v.Bordeleau, 568 A.2d 775, 777-778 (R. I. 1990). When a state agency bases its decision on financial data supplied to it by an entity which is seeking a license or certificate, the information is generally subject to disclosure. San Gabriel Tribunev. Superior Court of the State of California,192 Cal.Rptr. 415, 424-25, 143 Cal.App.3d 762, 777-78 (1983). Detailed cost and profit data are generally disclosable,Craigmont Care Center v. Department of SocialServices, 325 N.W.2d 918 (Ia. 1982), as long as the strategic formulas which are crucial to the ongoing operation of the business are not impaired. Burlington Northern v. OmahaPublic Power District, 888 F.2d 1228, 1232 (8th Cir. 1989).
In Colorado, information provided by insurance companies in order to obtain a certificate of authority to do business in the state is, in general, available to the public. Reg. 90-13(VII), 3 CCR 702-16, p. 77 (12-90). The Division of Insurance has concluded that, generally, the financial information pertinent to its decision to issue certificates of authority to conduct business must be disclosed even though, in other circumstances, it may be confidential. The Division allows disclosure of the following information which must be submitted by foreign insurance companies.
a. An annual statement, along with a statement of actuarial opinion and the supporting actuarial report;
b. Financial examination reports;
c. Market conduct examinations;
d. Original certificates of compliance;
e. Certificates of Deposit evidencing an amount on deposit with a regulatory official.
f. A copy of the proposed plan of operations for Colorado;
g. An explanation of any limitations imposed by the state of domicile and disclosure of any insurance department administrative action currently pending or taken against the company within the past five years.
Id. at 71-72.
The Division permits disclosure of the following information submitted by applicants seeking to form domestic insurers:
h. Details of proposed capitalization;
i. Individuals or entities who will control the company.
j. Individuals or entities who will provide insurance expertise;
k. A detailed 5-year projection of financial statements;
l. An explanation of products to be marketed and methods of marketings;
m. Details of proposed risk retention and identification of any reinsurance facilities;
n. Disclosure of the organizational structure;
o. Proposed locations of and duties to be performed by each company office;
p. A copy of any management or administrative agreements material to the operation of the proposed company;
* Organizational minutes;
* Information on the proposed fidelity bond;
* Any additional information including but not limited to feasibility studies, market research and analysis, actuarial reports and projections.
Id. 76-77.
We recognize that self-insurers under § 10-4-716(2) are distinguishable from insurance companies. Self-insurers are not heavily regulated insurance companies but private businesses that face different regulatory requirements. Thus, the commercial or financial information provided by self-insurers can more likely lead to competitive harm because such information usually is not publicly disclosed by them. However, this risk must be balanced against two other factors. First, self-insurers voluntarily undertake responsibilities as insurers to reduce their costs of doing business. Second, the responsibility of both insurance companies and self-insurers to the public is essentially the same. The public has a strong interest in assuring that companies which are granted insurance privileges can meet the obligations which those privileges entail.
Pursuant to § 10-4-716(2), the applicant must provide financial information which will show that it possesses and will continue to possess the ability to pay judgments and statutorily required benefits. Unless the applicant offers evidence that disclosure will likely cause "substantial harm" to its "competitive position," information which is required by the Director, or information which is voluntarily provided by the applicant and considered by the Director, should be disclosed by the Department. The evidence should be balanced against the public disclosure policy expressed in the Open Records Act.
Each department may pass "rules and regulations with reference to the inspection of [its] records as are reasonably necessary for the protection of such records and the prevention of unnecessary interference with the regular discharge of the duties of the custodian or his office." Section 24-72-203(1), C.R.S. (1988). The Department of Revenue may wish to pass regulations which establish the procedures which companies may use to assert claims for confidentiality and which set forth the types of information which may be disclosed. Such rules will assure fair, equitable, and expeditious treatment of requests for non-disclosure.See Regulation 90-13 (VII), supra.
SUMMARY
The Department of Revenue must disclose non-confidential financial and commercial information provided by an applicant for self-insurance pursuant to § 10-4-716 under the Open Records Act. To determine "confidentiality," the Director should (1) evaluate the harm to the applicant potentially created by disclosure and (2) the effect disclosure may have on the Department's future ability to adequately gain information from self-insurers. These factors must be balanced against the public's right to know. Before disclosure, the Department should advise the applicant of an outstanding Open Records Act request and permit the applicant to object to disclosure under an exemption to the Open Records Act. The Department should make an effort to reduce or otherwise restrict disclosure of confidential information if responsive non-confidential data can be provided.
Sincerely,
 GALE A. NORTON Attorney General
OPEN RECORDS INSURANCE STATE AGENCIES
§ 10-4-716, C.R.S. (1987) § 10-4-716(2), C.R.S. § 24-72-204(3)(a)(IV), C.R.S. (1988) § 24-72-204, C.R.S.
REVENUE, DEPT. OF
Non-confidential financial and commercial information required for certification as a self-insurer pursuant to § 10-4-716, C.R.S. (1987) is disclosable. Confidential information is not disclosable. Confidentiality is determined by balancing the public's right to know against the finding that disclosure will either (1) impair the Department's future ability to gain necessary information, or (2) cause substantial harm to an applicant's competitive position.